## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JOHN THOMPSON,<br><br>   Plaintiff,<br><br>  v.<br><br>SPIRIT REALTY CAPITAL, INC., RICHARD GILCHRIST, KEVIN CHARLTON, ELIZABETH FRANK, MICHELLE FRYMIRE, KRISTIAN GATHRIGHT, JACKSON HSIEH, DIANA LAING, NICHOLAS SHEPHERD, and THOMAS SULLIVAN,<br><br>   Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff John Thompson ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE AND SUMMARY OF THE ACTION

1. This is a stockholder action brought by Plaintiff against Spirit Realty Capital, Inc. ("Spirit" or the "Company") and the members of Spirit's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission

("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to sell Spirit to Realty Income Corporation ("Realty Income") (the "Proposed Transaction").

2. On October 29, 2023, Spirit entered into an Agreement and Plan of Merger with Realty Income and Realty Income's wholly owned subsidiary, Saints MD Subsidiary, Inc. ("Merger Sub") (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, each share of Spirit common stock will be converted into 0.762 newly issued shares of Realty Income common stock. Upon closing of the Proposed Transaction, Realty Income stockholders will own approximately 87% and Spirit stockholders will own approximately 13% of the combined company.

3. On December 1, 2023, the Board authorized the filing of the materially incomplete and misleading Form S-4 Registration Statement (as amended on December 15, 2023, the "Registration Statement") with the SEC. Specifically, the Registration Statement, which recommends that Spirit stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) Spirit's and Realty Income's financial projections; (ii) the financial analyses underlying the fairness opinions provided by the Company's financial advisors, J.P. Morgan Securities LLC ("J.P. Morgan") and Morgan Stanley & Co. LLC ("Morgan Stanley"); and (iii) potential conflicts of interest faced by Company insiders.

2

4.      The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Spirit stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5.      The special meeting for Spirit stockholders to vote on the Proposed Transaction is scheduled for January 19, 2024. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Spirit's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Spirit owns approximately 97 properties in this District. Moreover, each of the Individual Defendants, as Company officers or trustees, has extensive contacts within this District.

## THE PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of Spirit common stock.

10. Defendant Spirit is a Maryland corporation, with its principal executive offices located at 2727 North Harwood Street, Suite 300, Dallas, Texas 75201 and owns approximately 97 properties throughout Michigan. Spirit's shares trade on the New York Stock Exchange under the ticker symbol "SRC."

11. Defendant Richard Gilchrist has been Chairman of the Board and a director of the Company at all relevant times.

12. Defendant Kevin Charlton has been a director of the Company at all relevant times.

13. Defendant Elizabeth Frank has been a director of the Company at all relevant times.

14. Defendant Michelle Frymire has been a director of the Company at all relevant times.

15. Defendant Kristian Gathright has been a director of the Company at all relevant times.

16. Defendant Jackson Hsieh has been President, Chief Executive Officer and a director of the Company at all relevant times.

17. Defendant Diana Laing has been a director of the Company at all relevant times.

18. Defendant Nicholas Shepherd has been a director of the Company at all relevant times.

19. Defendant Thomas Sullivan has been a director of the Company at all relevant times.

20. Defendants identified in paragraphs 11-19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

21. Spirit is an internally-managed net-lease real estate investment trust ("REIT"). Spirit invests primarily in single-tenant, operationally essential real estate assets throughout the United States, which are subsequently leased on a long-term, triple-net basis to high quality tenants with operations in retail, industrial and certain

5

other industries. Spirit's operations are generally carried out through Spirit Realty, L.P., a Delaware limited partnership (the "Spirit Partnership"), and its subsidiaries. Spirit General OP Holdings, LLC, a Delaware limited liability company and one of Spirit's wholly-owned subsidiaries, is the sole general partner and owns approximately 1% of the Spirit Partnership. Spirit and its wholly-owned subsidiary, Spirit Notes Partner, LLC, are the only limited partners and, together, own the remaining 99% of the Spirit Partnership. As of September 30, 2023, Spirit owned approximately 2,037 properties throughout all 50 states with approximately $9.4 billion in real estate investments.

**The Proposed Transaction**

22. On October 30, 2023, Spirit announced that it had entered into the Proposed Transaction, stating, in relevant part:

> SAN DIEGO and DALLAS, October 30, 2023 . . . Realty Income Corporation (Realty Income, NYSE: O), The Monthly Dividend Company®, and Spirit Realty Capital, Inc. (Spirit, NYSE: SRC), announced today that the two companies have entered into a definitive merger agreement by which Realty Income will acquire Spirit in an all-stock transaction valued at an enterprise value of approximately $9.3 billion. The leverage-neutral transaction is expected to deliver over 2.5% accretion to Realty Income's annualized Adjusted Funds from Operations (AFFO) per share. Additionally, no new external capital is expected to be required to finance the transaction. The merger, once completed, will result in an enterprise value of approximately $63 billion for the combined company, enhancing Realty Income's size, scale, and diversification to expand its runway for future growth.
>
> Under the terms of the merger agreement, Spirit shareholders will receive 0.762 newly-issued Realty Income common shares for each

Spirit common share they own. At closing, this will result in Realty Income and Spirit shareholders owning approximately 87% and 13%, respectively, of the combined company. The merger is subject to customary closing conditions, including the approval of Spirit shareholders, and is expected to close during the first quarter of 2024. Additionally, from the date of the merger agreement through the closing of the transaction, Spirit may declare and pay regular, quarterly cash dividends to holders of its common stock and to holders of its preferred stock. No approval of Realty Income shareholders will be required in connection with the merger.

"The merger with Spirit is yet another example of how our size, scale, and unique platform value continue to create substantial value for our shareholders," said Sumit Roy, President and Chief Executive Officer of Realty Income. "We expect that this transaction will create immediate and meaningful earnings accretion, while enhancing the diversification and depth of our high-quality real estate portfolio. Spirit's assets are highly complementary to our existing portfolio, extending our investments in industries that have proven to generate durable cash flows over several economic cycles. We also believe this merger will strengthen our longstanding relationships with existing clients and allow us to curate new ones with partners whose growth ambitions can accelerate alongside Realty Income. Moreover, our technology and infrastructure investments following the VEREIT merger in 2021 have amplified our efficiency in integrating assets and augmented our capabilities in maximizing the value of our properties."

Jackson Hsieh, President and Chief Executive Officer of Spirit Realty said, "Since the board appointed me CEO in 2017, our leadership team and dedicated associates have effectuated numerous accomplishments, including improved tenant quality and asset diversification, implementation of advanced analytical tools and processes, and an excellent balance sheet with well-laddered maturities and below-market fixed debt costs. This transaction is the culmination of these accomplishments, and merging with Realty Income offers Spirit's shareholders immediate value by providing a more competitive cost of capital, an A-rated balance sheet, broader tenant diversification, and the ability to leverage economies of scale."

**Investment Rationale**

7

- **Significant anticipated AFFO per share accretion on a leverage-neutral basis with meaningful cost synergies**. Relative to its standalone annualized AFFO per share run rate, Realty Income estimates the transaction to be over 2.5% accretive while maintaining a combined leverage ratio of approximately 5.5x (based on Net Debt and Preferred Equity / Annualized Adjusted EBITDAre as of June 30, 2023). As of June 30, 2023, Realty Income and Spirit maintained leverage ratios of 5.4x and 5.5x, respectively. The estimated earnings accretion assumes approximately $50 million of annualized G&A synergies (or approximately $30 million of annualized G&A synergies excluding stock-based compensation).

- **Complementary real estate portfolio improves diversification and enhances runway for future growth**. The combined portfolio is expected to result in reduced rent concentration for nine of Realty Income's current top 10 industries and 18 of its current top 20 clients, while increasing the combined portfolio's annualized contractual rent from $3.8 billion to $4.5 billion. Convenience stores are expected to remain the combined company's largest industry, at 10.2% of annualized contractual rent for the combined portfolio as of June 30, 2023, compared to 11.1% of annualized contractual rent of Realty Income on a standalone basis. The Industrial property type is expected to represent 15.1% of annualized contractual rent for the combined portfolio, compared to 13.1% of annualized contractual rent of Realty Income on a standalone basis. The enhanced size, scale, and diversification of the portfolio further positions Realty Income as the real estate partner of choice for large net lease transactions, particularly given the current interest rate environment.

- **Public capital not expected to be required to finance transaction, low in-place rates on existing debt**. Earnings accretion is supported by approximately $4.1 billion of existing Spirit debt at a weighted average interest rate of 3.48% and weighted average term to maturity of approximately 4.9 years. In addition, Realty Income intends to assume approximately $173 million of Spirit's outstanding Series A Preferred Stock at an annual cash dividend of 6.0%, which is redeemable at par and is

expected to remain publicly traded on the New York Stock Exchange.

- **Prudent investment underwriting bolstered by proprietary credit research and predictive analytics platform**. Realty Income's longstanding investment track record over multiple decades is supported by historical outcomes, insights and data analytics gleaned from its net lease real estate portfolio. We believe our comprehensive and conservative underwriting approach positions the investment to retain potentially meaningful earnings and value upside over the long-term.

- **Preserves quality of key credit metrics for best-in-class balance sheet**. Realty Income remains one of only eight U.S. REITs with at least two A3 / A- credit ratings by Moody's and S&P and is committed to maintaining its conservative credit metrics while executing on its growth strategy. In addition to the transaction resulting in leverage neutrality, Realty Income is expected to maintain or improve several key credit metrics as a result of this transaction, including with respect to fixed charge coverage, unsecured assets / unsecured debt, secured debt / gross assets and total debt / gross assets.

- **Benefits of scale extends to capital markets as Realty Income solidifies position as one of the largest real estate companies in the S&P 500**. Pro forma for the merger, Realty Income expects to remain in the top 200 of the S&P 500 index and become the 4th largest REIT in the index, by enterprise value, with a total enterprise value of approximately $63 billion. Further, after giving effect to the merger agreement's fixed exchange ratio and the company's current 3-month average daily trading volume, the resulting Realty Income stock is expected to trade approximately $300 million of value on a daily basis. We believe the company's highly liquid share currency and increasing representation in key benchmark equity indices will create natural demand for the stock and provide Realty Income with meaningful flexibility to continue to effectively and efficiently access the capital markets.

**Advisors**

> Wells Fargo is serving as sole financial advisor and Latham & Watkins is acting as legal advisor to Realty Income.
>
> J.P. Morgan Securities LLC and Morgan Stanley & Co. LLC are serving as financial advisors and Wachtell, Lipton, Rosen & Katz is acting as legal advisor to Spirit.

**The Materially Incomplete and Misleading Registration Statement**

23. On December 15, 2023, the Board caused to be filed a materially incomplete and misleading Registration Statement with the SEC. The Registration Statement, which recommends that Spirit stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) Spirit's and Realty Income's financial projections; (ii) the financial analyses underlying the fairness opinions provided by the Company's financial advisors, J.P. Morgan and Morgan Stanley; and (iii) potential conflicts of interest faced by Company insiders.

*Material Misrepresentations and/or Omissions Concerning the Financial Projections for Spirit and Realty Income*

24. The Registration Statement fails to disclose material information concerning the financial projections for the Company and Realty Income.

25. Critically, the Registration Statement fails to disclose the unlevered free cash flows that each of Spirit and Realty Income are forecasted to generate for the fiscal years 2023E through 2026E, relied upon by the Board's financial advisor J.P.

10

Morgan in connection with its *Discounted Cash Flow Analysis*. A discounted cash flow analysis is considered the premier and most reliable valuation tool that a banker can employ in a merger context, because management's own internal projections (typically cash flows or unlevered free cash flows) are the core component of the analysis.[1] The unlevered free cash flows formed the basis of the *Discounted Cash Flow Analysis* of Spirit and Realty Income that J.P. Morgan performed in connection with its fairness opinion. *See* Registration Statement at 51 ("J.P. Morgan conducted a discounted cash flow analysis for the purpose of determining an implied fully diluted equity value per share for both Spirit common stock and Realty Income common stock. J.P. Morgan calculated the unlevered free cash flows that Spirit and Realty Income are expected to generate during fiscal years 2023E through 2026E[.]").

26. The Registration Statement includes a summary of certain of Realty Income and Spirit management's financial projections for fiscal years 2023E through 2026E. *See id.* at 63-65. Yet, this summary fails to include the most important projections – the Company's and Realty Income's respective unlevered

---

[1] *See, e.g., Onti, Inc. v. Integra Bank*, 751 A.2d 904, 916 n.53 (Del. Ch. 1999) (indicating that the Delaware Chancery Court has employed the discounted cash flow analysis method as a method of valuation and that experts consider it to be the preeminent method of valuation); *Neal v. Alabama By-Products Corp.*, C.A. No. 8282, 1990 Del. Ch. LEXIS 127, at *20 (Del. Ch. Aug. 1, 1990) (noting that experts consider the discounted cash flow analysis method to be the preeminent method of valuation).

free cash flows. The Registration Statement further fails to disclose how the unlevered free cash flows were calculated and the underlying line items. The omission of the unlevered free cash flows and underlying line items renders the projections on pages 63-65 and the summary of J.P. Morgan's *Discounted Cash Flow Analysis* of Spirit and Realty Income set forth on page 51 of the Registration Statement incomplete and misleading, because the Registration Statement provides a materially incomplete and misleading valuation picture of the Company.

27. Additionally, the Registration Statement fails to disclose the line items underlying the calculation of the Company's and Realty Income's respective Adjusted Funds from Operations.

*Material Misrepresentations and/or Omissions Concerning J.P. Morgan's and Morgan Stanley's Financial Analyses*

28. The Registration Statement fails to disclose material information concerning J.P. Morgan's and Morgan Stanley's financial analyses.

29. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, in addition to the unlevered free cash flows used in the analysis, the Registration Statement fails to disclose a quantification of: (i) Spirit's and Realty Income's respective terminal values; (ii) the inputs and assumptions underlying the discount

rates ranging from 8.00% to 8.50% for Spirit and 7.50% to 8.00% for Realty Income; and (iii) each company's respective net debt as of June 30, 2023.

30. With respect to J.P. Morgan's *Public Trading Multiples* analysis, the Registration Statement fails to disclose: (i) the individual multiples and financial metrics for each company; and (ii) Spirit's and Realty Income's respective cash net operating income for the next twelve months.

31. With respect to Morgan Stanley's *Dividend Discount Analysis* of each of Spirit and Realty Income, the Registration Statement fails to disclose a quantification of: (i) Spirit's and Realty Income's respective terminal values; (ii) the inputs and assumptions underlying the discount rates ranging from 9.3% to 11.3% for Spirit and 8.6% to 10.6% for Realty Income; and (iii) each company's respective net debt as of June 30, 2023

32. With respect to Morgan Stanley's *Comparable Public Company Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for each company.

33. With respect to Morgan Stanley's *Premiums Paid Analysis*, the Registration Statement fails to disclose the individual premiums observed for each transaction.

34. With respect to Morgan Stanley's *Wall Street Research Analyst Price Targets and NAV Targets* analysis, the Registration Statement fails to disclose: (i)

13

the individual price targets observed for each of Spirit and Realty Income; and (ii) the inputs and assumptions underlying the cost of equity of 10.3% for Spirit and 9.6% for Realty Income.

*Material Misrepresentations and/or Omissions Concerning Company Insiders' Potential Conflicts of Interest*

35. The Registration Statement fails to disclose potential conflicts of interest faced by the Company's insiders.

36. Specifically, the Registration Statement fails to disclose whether any Company officers or directors have secured employment with Realty Income upon closing of the Proposed Transaction. Additionally, the Registration Statement fails to disclose whether any of Realty Income's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation, as well as the details of any discussions or negotiations concerning management participation in the combined company that occurred prior to execution of the Merger Agreement.

37. In sum, the omission of the above-referenced information renders statements in the "Spirit Unaudited Prospective Financial Information," "Opinion of Spirit's Financial Advisors," "Background of the Merger," and "Interests of Spirit Directors and Executive Officers in the Merger" sections of the Registration Statement materially incomplete and misleading in contravention of the Exchange

Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Spirit will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Spirit**

38. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

39. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Spirit is liable as the issuer of these statements.

40. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

15

41. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

42. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

43. The Registration Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

44. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

45. Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

46. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of Spirit within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of

their positions as officers and/or trustees of Spirit and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

50.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Spirit, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Registration Statement that does not contain any untrue statements of material fact;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  December 18, 2023                                **ACOCELLI LAW, PLLC**

                                                        By  */s/ Richard A. Acocelli*
                                                            Richard A. Acocelli
                                                            33 Flying Point Road, Suite 131
                                                            Southampton, NY 11968
                                                            Tel: (631) 204-6187
                                                            Email: racocelli@acocellilaw.com

                                                        *Attorneys for Plaintiff*